FILED
SUPERIOR COURT
OF GUAM

2021 FEB 11 PM 12: 31

CLERK OF COURT

By: _____

IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,                  )      CRIMINAL CASE NO. CF0317-18

            Plaintiff,        )

            vs.                  )      **DECISION AND ORDER RE.**
                                       )      **DEFENDANT'S MOTION**
JAY DANIEL FAMA NEDEDOG,     )      **TO DISMISS INDICTMENT**
DOB: 08/10/1996                  )      **("EXCESSIVE USE OF HEARSAY")**

            Defendant.       )
_____ )

## INTRODUCTION

This matter came before the Honorable Maria T. Cenzon on November 16, 2020 for a hearing on Defendant Jay Daniel Fama Nededog's ("Defendant") Motion to Dismiss the Indictment (Oct. 1, 2020)(the "Motion") filed on his behalf by and through his counsel Assistant Alternate Public Defender Heather Zona. Defendant was represented at the hearing by Alternate Public Defender Ana Maria Gayle, who submitted on the pleadings on record with the Court without further argument. Assistant Attorney General Brendalyn Joseph represented the People of Guam (the "People"). All parties were present at the hearing via Zoom platform as authorized by the Guam Supreme Court in Administrative Order No. ADM No. 001-20 (July 1, 2020). Following the hearing on the Motion, the court took the matter under advisement pursuant to Supreme Court of Guam Administrative Rule 06-001 and CVR 7.1(e)(6)(A) of the Local Rules of the Superior Court of Guam. After reviewing the record on file with the court, the arguments

of counsel, if any, and the applicable statutory and case law,[1] the court now issues this Decision and Order **<u>DENYING</u>** Defendant's Motion to Dismiss.[2]

## RELEVANT BACKGROUND

On May 31, 2018, the grand jury returned a true bill indicting Defendant of First Degree Criminal Sexual Conduct (As a First Degree Felony)(Three Counts); Second Degree Criminal Sexual Conduct (As a First Degree Felony)(4 Counts); Third Degree Criminal Sexual Conduct (As a Second Degree Felony)(5 Counts) and Fourth Degree Criminal Sexual Conduct (As a Misdemeanor)(6 Counts). *Indictment* (May 31, 2018). The Indictment alleges that Defendant committed acts constituting criminal sexual conduct of various degrees upon T.B.A. (DOB: 12/22/2007), E.D.A. (DOB: 12/17/2008), A.H. (DOB: 09/26/1996), and S.D. (09/07/1993).

On October 1, 2020, Defendant filed his Motion to Dismiss on the basis that the grand jury relied on "incompetent" hearsay evidence in issuing the Indictment. The gravamen of Defendant's motion is that the only testimony presented to the grand jury was that of a single police officer, who "did not participate in the investigation of the case and did not draft the police reports" and whose testimony consisted of reading into the record "portions of the report drafted by other individuals." *Motion* at 2. The People did not file a written Opposition, but

---

[1] Defendant asks this Court to take judicial notice of the proceedings in this case, citing to Rule 201 of the Guam Rules of Evidence. The Court takes judicial notice only of adjudicative facts, such as the fact that the grand jury proceeding resulted in a true bill and indictment filed against Defendant in this case. The parties do not dispute that testimonial evidence was presented to the grand jury. However, the court does not take judicial notice of this undisputed fact nor of the substance of any of such testimony before the grand jury. No grand jury transcripts were provided to the Court by either party relevant to the instant Motion, nor did any party provide the Court with justification to review the secret proceedings of the grand jury under 8 GCA Section 50.34. Therefore, the Court did not review the grand jury transcripts of these proceedings.

[2] It is not disputed that the Defendant properly brings this motion to dismiss the indictment at this pre-trial stage, nor is there any question raised as to whether this Court has jurisdiction to hear the Motion to Dismiss. *See Motion* at p. 3. *See also,* 8 GCA § 65.10, § 65.15 ("Motions Which Must be Made Prior to Trial")("The following shall be raised prior to trial: (a) Defenses and objections based on defects in the institution of the prosecution; (b) Defenses and objections based on defects in the indictment, information or complaint... ."); Criminal Procedure Rules CR 1.1(b)(1)("An application to the court for an order shall be by motion."); Local Rules of the Superior Court of Guam CVR 7.1 (Motion Practice).

declared on the record at the scheduled hearing that it opposed the Motion.[3] The Defendant submitted on the Motion without further argument and the Court took the matter Under Advisement following the November 16, 2020 hearing.[4]

## LAW AND ANALYSIS

### I. A Defendant's Right to Be Charged By Grand Jury Indictment Is Based on Guam, Not Federal, Law.

In his opening brief, Defendant incorrectly asserts his right to a grand jury determination of probable cause under the Fifth and Fourteenth Amendments to the Constitution and upon the Organic Act of Guam;[5] however, on Guam, the right to be charged via a grand jury indictment is grounded in local law, enacted by the Guam Legislature. It is not a right which is guaranteed to Guamanians under the Fifth or Fourteenth Amendments to the U.S. Constitution. *People v. San Nicolas*, 2013 Guam 21 (citing 8 GCA §§ 1.15, 50.10, 50.54 (2005); *People v. Felder*, 2012 Guam 8 ¶¶ 24, 30)(Guam provides a statutory, not a constitutional, right to a grand jury indictment; therefore, federal constructive amendment analysis is inapplicable).[6]

---

[3] The court admonished the People for failing to file a written response to the Motion within the time set forth in the motions cutoff of October 14, 2020. The Eleventh Administrative Order of the Guam Supreme Court only tolled the filing of pleadings which were to be due between August 16 and October 19 to October 19, 2020. The People failed to file any responsive pleading by October 19 and as of the date of the hearing, did not file any written response. However, the court is obligated to decide the merits of a motion even absent a written opposition. *Quitugua v. Flores*, 2004 Guam 19 at ¶24. The Local Rules of the Superior Court have been modified since the Guam Supreme Court issued its decision in Quitugua; however, the principles underlying the court's duty to conduct an analysis of an unopposed motion are sound.

[4] Defendant has asserted his right to speedy trial pursuant to 8 G.C.A. § 80.60 as of August 14, 2020, which time has been tolled until February 28, 2021, pursuant to Supreme Court of Guam Administrative Order No. 21-001 and its prior orders. However, the filing of the instant Motion to Dismiss further tolls the running of the speedy trial clock because a dispositive ruling in his favor inures to Defendant's benefit. *Ungata v. Superior Court of Guam*, 2013 Guam 9 (delays caused by, or for the benefit of, the Defendant constitute good cause for speedy trial delay. (citing *Carver*, 1998 Guam 23 ¶ 16).

[5] Defendant brings this Motion "pursuant to 1) Chapter 50, Title 8 of the Guam Code; 2) Sections (e) and (u) of the Bill of Rights of the Organic Act of Guam ...; and 3) the Fifth and Fourteenth Amendments of the United States Constitution." *Mot.* at 1.

[6] The fact that, on Guam, a criminal defendant's right to a grand jury determination of probable cause is statutory makes the right no less significant; however, the Court points to controlling case law on the origin of a defendant's grand jury right as local, as opposed to federal, legislation.

Title 8, Guam Code Annotated, Chapter 50 governs grand jury proceedings in Guam. A grand jury's function is "to inquire into felonies and any related misdemeanors triable by the court." 8 G.C.A. § 50.10. The grand jury "*shall* find an indictment when from the evidence presented there is reasonable cause to believe that an indictable offense has been committed and that the defendant committed it." 8 G.C.A. § 50.54 (emphasis in original). The indictment serves two essential purposes: it *affirms* that the grand jury found probable cause for the charges in the indictment, and it gives the defendant notice of the charges. *People v. Taisacan,* 2018 Guam 23 ¶29; *Guam v. San Nicolas,* 2013 Guam 21 ¶12. The Guam Supreme Court has found that "reasonable cause" and "probable cause" are equivalent in meaning and requires the grand jury to base its indictment upon "'such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused.'" *San Nicolas* at fn. 5 (quoting *People v. Brice,* 44 Cal. Rptr. 231, 240 (Ct. App. 1965)). Further, in determining whether to issue a true bill of indictment, the grand jury "shall receive only competent evidence but the fact that evidence which is incompetent was received by the grand jury does not render the indictment void where sufficient competent evidence to support an indictment was received by the grand jury." 8 G.C.A. § 50.42.

II.     **Hearsay Is "Competent Evidence" Upon Which Grand Jury May Issue Indictment.**

Defendant asks this Court to dismiss all of the charges against him as set forth in the Indictment because the grand jury relied upon the "purely...hearsay [testimony] of a single witness who had no role in investigating the case" and that such testimony is not "competent evidence" as required under Title 8, Guam Code Annotated, Chapter 50. Defendant invites the Court to exercise its inherent supervisory authority to direct grand jury proceedings in such a manner as to dictate the process and procedure by which the grand jury returns a "true bill,"

and specifically seeks an order of this court limiting the type of evidence which may be considered "competent" under 8 GCA § 50.42. In so doing, Defendant urges this Court to declare that hearsay is *never* competent evidence under Guam law, whether the evidence is presented in a civil or criminal trial or to the grand jury pursuant to Section 50.42.[7] The Defendant also asks this Court to *overrule* the grand jury's finding of probable cause to sustain the present Indictment against Defendant. For the reasons set forth herein, this Court declines to do so.

### A.      Hearsay is Competent Evidence.

The query before this Court in ruling on this instant Motion can be reduced to simply, "Is hearsay competent evidence upon which a grand jury may find probable cause to return a true bill?" The controlling legal authority on the question supports an unequivocal, yes.

In ruling on this question, the Court looks to the clear and unambiguous language of the statute:

> **[8 GCA] § 50.42. Evidence Presented to the Grand Jury.** The grand jury shall receive only competent evidence but the fact that evidence which is incompetent was received by the grand jury does not render the indictment void where sufficient competent evidence to support the indictment was received by the grand jury.

8 GCA § 50.42. The definition of "competent evidence" in Section 50.42 has long included hearsay evidence. *See, People v. Quidachay,* 1986 WL 68912 *2 (Guam D.Ct.App.Div. 1986)(hearsay evidence is not necessarily incompetent for the limited purpose of being presented to the Grand Jury; "hearsay, though not admissible over objection at trial, will be

---

[7] *See, Motion* pp. 8-13. Defendant's Motion devotes nearly six pages to a discussion on what constitutes "competent evidence," relying on sources including *Black's Law Dictionary, The Free Dictionary, Thelaw.com Dictionary, FindLaw* and others, but failing to cite to applicable case law on point. Defendant cites also to civil cases which are wholly inapplicable and irrelevant in assisting the Court in its determination of the matter at bar. The Court confines its decision to the context of evidence presented to a grand jury pursuant to 8 GCA, Chapter 50.

regarded as sufficient to establish a fact")(citing *Nalley's Inc. v. Corona Processed Foods, Inc.,* 240 Cal.App.2d 948, 50 Cal.Rptr. 173, 175 (1966)).

The Supreme Court of the United States made this declaration in *Bracy v. U.S.,* 435 U.S. 1301, 98 S.Ct. 1171 (1978), which remains good law today:

> Because it seems to me that applicants misconceive the function of the grand jury in our system of criminal justice, I cannot conclude that four Justices of this Court are likely to vote to grant their petition [for a stay of the judgment of conviction]. *The grand jury does not sit to determine the truth of the charges brought against a defendant, but only to determine whether there is probable cause to believe them true, so as to require him to stand his trial.* Because of this limited function, we have held that an indictment is not invalidated by the grand jury's consideration of hearsay, *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), or by the introduction of evidence obtained in violation of the Fourth Amendment, *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). *While the presentation of inadmissible evidence at trial may pose a substantial threat to the integrity of that factfinding process, its introduction before the grand jury poses no such threat.* I have no reason to believe this Court will not continue to abide by the language of Mr. Justice Black in *Costello* [citation omitted]: "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."

*Bracy* at 1302 (emphasis added). Indeed, Rule 1101 of the Guam Rules of Evidence (2004) specifically exempts grand jury proceedings from the application of rules of evidence (except privileges) otherwise applicable to civil actions and proceedings, criminal cases and proceedings and contempt proceedings (except those in which the court may act summarily). GRCP Rule 1101 (a), (c)(2).

In this case, the Defendant asks this Court to find that the testimony of a single witness, who was not involved in the investigation of the offenses with which Defendant was charged, but who reads a police report (which he did not author) into the record during the grand jury proceeding, is *not* "competent evidence" under 8 GCA §50.42. While the prosecution may have arguably presented "better" evidence, in the opinion of the movant, to the grand jury, the

conclusion it begs the Court to reach is not supported by well-established legal authority and none of the cases cited to by the Defendant supports such a finding. Nevertheless, in the face of overwhelming controlling precedent to the contrary, Defendant contends that hearsay testimony, without more, proffered to a grand jury is insufficient to support a true bill, arguing as follows:

> The prosecution did not call any of the accusers to testify before the grand jury.

> Guam Police Department Officer Jason Gamboa was the government's only witness at the grand jury proceedings. Officer Gamboa did not participate in the investigation of the case and did not draft the police reports. As of the date of the grand jury proceedings, Officer Gamboa was assigned to Training and Staff Development. Officer Gamboa's testimony consisted of reading portions of the police report drafted by other individuals.

> The grand jury asked no questions and it appears no investigation was conducted. *** Now, based purely on hearsay from a single witness who had no role in investigating the case, defendant faces potentially multiple decades in jail.

*Motion* at 2.[8] By his opening statement, Defendant asks this Court to invade the province of the grand jury because he is dissatisfied not only with the type of evidence presented to the grand jury, but with the manner in which the grand jury received the evidence, i.e., that they asked no questions and made no further investigation. However, the Defendant presents no compelling legal authority for this Court to divert from clearly established, controlling legal precedent

---

[8] The Defendant throws shade upon the grand jury and its purported failure to perform its duty, complaining that "[n]o independent investigation was performed by the grand jury" and that the evidence on which the grand jury found probable cause to indict "was at least 'uncertain.'" *Motion* at p. 17. "Far from meeting a stricter standard of proof, the grand jury relied on less information than the police, as at least the arresting officers interviewed witnesses." *Id.* Ignoring Defendant's unsupported claim that the grand jury is held to "a stricter standard of proof," Defendant provides no legal authority that mandates that the grand jury conduct any specific type of investigation or ask questions of anyone, and, in fact, 8 GCA § 50.46 provides, in relevant part, that "the grand jury shall receive *only* evidence presented to it by the prosecuting attorney." (Emphasis added). This Court finds no provision of Guam law requiring the grand jury to conduct any "independent investigation" prior to issuing a true bill of indictment and any such conduct would most certainly be challenged by Defendant, despite encouraging such unsanctioned acts by the grand jury in this instance. A grand jury is permitted, under 8 G.C.A. § 50.18(b) to "request advice of the Court," but it is not mandated to do so. To borrow from Chief Justice Rhenquist in *Bracy*, Defendant clearly misconceives the function of the grand jury and the limits of its authority under Guam law.

governing the conduct of or the type of evidence presented to the grand jury in these proceedings.

### 1. California state law upon which Defendant relies is irrelevant.

Defendant relies heavily upon California law in support of its Motion; however, California state law is wholly irrelevant to the case-at-bar because California Penal Code Section 995 *specifically* authorizes a court to set aside and indictment or information that is not supported by "reasonable or probable cause." Section 995(a)(1)(A), (B) of the California Penal Code is found in Chapter 2 of the California Penal Code under "Chapter 2: Setting Aside the Indictment or Information," and provides, in relevant part, as follows:

> (a) Subject to subdivision (b) of Section 995a, the indictment or information shall be set aside by the court in which the defendant is arraigned, upon his or her motion, in either of the following cases:
> (1) If it is an indictment:
> (A) Where it is not found, endorsed, and presented as prescribed in this code.
> (B) That the defendant has been indicted without reasonable or probable cause.

Cal. Penal Code § 995 (West).

Defendant first cites to *People v. Backus,* 590 P.2d 837 (Cal. 1979), in support of his position that this Court may overturn the grand jury's determination of probable cause in this case. *Mot.* at 7. There, the California Supreme Court ruled: "The grand jury shall receive none but evidence that would be admissible over objection at the trial of a criminal action, but the fact that evidence which would have been excluded at trial was received by the grand jury does not render the indictment void where sufficient competent evidence to support the indictment was received by the grand jury. (Pen.Code, s 939.6, subd. (b).) **An indictment based solely on hearsay or otherwise incompetent evidence is unauthorized and must be set aside on motion _under Penal Code section 995_."** *Backus,* 23 Cal.3d 360, 387 (citation omitted)(emphasis added). However, the California Supreme Court found that there was, in that

case, sufficient evidence before the grand jury to issue an indictment and declared further that "[a] reviewing court may not substitute its judgment for that of a grand jury or magistrate in determining the sufficiency of the evidence and must draw all reasonable inferences in support of the indictment or information." *Id.* at 391 (citing *Williams v. Superior Court*, 71 Cal.2d 1144, 1148, 80 Cal.Rptr. 747, 458 P.2d 987 (1969); *Lorenson v. Superior Court*, 35 Cal.2d 49, 216 P.2d 859 (1950); *People v. Aday*, 226 Cal.App.2d 520, 38 Cal.Rptr. 199 (1964)). The California Supreme Court also rejected the defendants' contention that the prosecution's presentation of "excessive inadmissible evidence" to the grand jury violated their purported due process rights, holding that it "has assumed, but heretofore found it unnecessary to decide, that grand jury indictment procedures must comport with the demands of the due process clauses of both the federal and state Constitutions." *Backus* at 392.

Defendant also cites to *Cook v. Superior Court*, 84 Cal.Rptr. 664 (Cal. Ct. App. 1970), in support of his motion. In that case, all of the evidence presented to the grand jury was hearsay and the appellate court ruled that "An indictment based entirely on hearsay evidence is unauthorized and must be set aside on motion ***under Penal Code Section 995.***" *Cook* at 670 (citation omitted). However, the appellate court also stated that, although the proceedings before the grand jury indicated considerable hearsay evidence, "if the competent evidence would lead '(A) man of ordinary caution or prudence * * * to believe and conscientiously entertain a strong suspicion of the guilt of the accused', the indictment will not be set aside." *Id.* at 667 (citation omitted).

Guam's grand jury statutes, in marked and obvious contrast to California's, do not permit dismissal of an indictment upon a contention that it is not based upon reasonable or probable cause. 9 GCA § 50.14 provides that a motion to dismiss the indictment "may be based on

objection to the array or on the lack of legal qualification of an individual juror, if not previously determined upon challenge." No other provision in the grand jury statute permits this court to disturb the findings of the grand jury and, insofar as *Quidachay* and *Garrido* remain controlling on the trial courts, the Court will not deign to rule in direct contravention of law which is controlling upon this Court.

Defendant's reliance upon California case authority in support of his motion to dismiss the indictment for lack of probable cause is not only misplaced, but raises concerns for this Court as to whether such reliance is made in good faith, or for the purpose of misleading it.[9] Even a cursory reading of the headnotes of these cases would alert a diligent advocate to the statutory support *in California* for setting aside an indictment for lack of probable cause. This statute is *not* available in Guam and this Court will not use its inherent supervisory authority to contort existing law in order to reach this conclusion.

The Guam Supreme Court has not been called to address the issue where the trial court has permeated the sanctity of a grand jury proceeding and overturned its finding of probable cause – which is what Defendant asks the court to do here. However, in ruling that a trial court did not act inappropriately in inquiring whether a grand jury was apprised of facts that constitute elements of an offense, the Supreme Court declared that "the trial court cannot substitute its own conclusions about the evidence for the actions of the grand jury." *San*

---

[9] The Court reminds Defense Counsel of her duty of candor to toward the tribunal under Rule 3.3 of the Guam Rules of Professional Conduct which demands, in part, that "[a] lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal." Defense Counsel also cited to *People v. Rios,* 2008 Guam 22 ¶ 11 for the proposition that 8 GCA § 45.80 applies to grand jury proceedings. However, this misstates the discussion therein. The Guam Supreme Court, finding that it was not clear from the record below upon what basis the trial court dismissed the first indictment, was simply guessing as to what legal authority it relied, clearly noting that "nothing in the record indicates what statutory authority the court relied upon in dismissing the indictment, the dismissal *most likely* falls under 8 GCA § 45.80." *Id.* (quotation omitted)(emphasis added). The Court then surmised that "*Alternatively*, the court *may have simply decided* as a matter of law that no crime was committed, similar to a demur under California law." *Id.* (emphasis added). The Guam Supreme Court cannot be said to have made any ruling in *Rios* on the applicability of 8 GCA § 45.80 on indictments issued by a grand jury.

*Nicolas, supra,* at fn. 8. The Court finds no reason to divert from this well settled principle of law now.[10]

Support for leaving the determination of a grand jury undisturbed is established by the holding of the Supreme Court of the United States in *Costello v. U.S.,* 350 U.S. 359, 364 (1956). In that case, the High Court found that allowing trial courts to review the findings of a grand jury "would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules." *Costello* at 364. In that vein, the Costello court opined: "No case has been cited nor have we been able to find any, furnishing an authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof....". *Costello* at 362-363 (quoting *U.S. v. Reed,* 27 Fed.Cas. pages 727, 738, No. 16,134)(1852)).

Citing *Costello,* the Ninth Circuit Court of Appeals in *People of Guam v. Quidachay,* 815 F.2d 1311 (9th Cir. 1987), declared that "[t]he [United States] Supreme Court has held that there is no constitutional prohibition against presenting hearsay to a grand jury or against hearsay forming the basis for an indictment." *Quidachay,* 815 F.2d at 1312. *Costello* and *Quidachay* remain good law today and, importantly, "are *precedent binding on the trial courts* and considered persuasive authority." *Nicholson v. Superior Court of Guam,* 2007 Guam 9 (citing *People v. Quenga,* 1997 Guam 6 ¶ 13 n. 4).[11] Thus, despite Defendant's urging to reject the legal

[10] Compare, 8 GCA § 50.46 which permits the Court to dismiss an Indictment for failure of the prosecution to present exculpatory evidence to the grand jury.

[11] Regarding whether the decisions of the Appellate Division of the District Court of Guam were controlling upon the Guam Supreme Court, the Guam Supreme Court declared in *Quenga:* "It may go without saying, but this Court does not recognize the decisions of the Appellate Division as controlling our construction of law. We consider its opinions as precedent that is **binding upon the trial courts of Guam**, but these decisions, like those of the Court of Appeals, are considered persuasive authority when we consider an issue. In providing for a Supreme Court of Guam, Congress adopted a model that puts Guam on a par judicially with the several States, which grants this Court the authority to interpret Guam's laws. The decisions of this Court will be reviewed in due time and course by the Supreme Court of the United States alone. See 48 U.S.C. §1424-2 (1994) (also providing a period of fifteen (15) years during which the Ninth Circuit Court of Appeals retains certiorari review of this Court's decisions).

authority which absolutely controls the trial court's decision, the state of the law remains that which was established by *Costello:* hearsay, when considered by a grand jury, is "competent evidence" for the purposes of 8 GCA § 50.42.

Counsel for Defendant is correct in one aspect of her argument, however: the states and territories are free to enact law that is more restrictive than its federal counterparts. However, the Guam Legislature has not done so, *with the exception* of requiring the People to provide exculpatory evidence to the grand jury pursuant to 8 GCA Section 50.46. Guam law requires the prosecuting attorney to submit to the grand jury "any evidence in his or her possession which would tend to negate guilt." 8 GCA § 50.46 (2005)(emphasis added); *see* People v. Sablan, 1986 WL 68900 *3 (D. Guam App. Div. 1986)(explaining that § 50.46 is based on § 939.7 of the California Penal Code, which the California Supreme Court has interpreted to require the prosecutor to provide exculpatory evidence to the grand jury). There is no such federal counterpart to this provision in the Guam law, but California Penal Code 939.71 provides for a dismissal of an indictment when the prosecutor has failed to present exculpatory evidence to the grand jury.[12]

Having established that California law provides no support for Defendant in this case, we now examine the authority which controls this Court's decision here.

---

While we note our authority to modify pre-existing interpretations of our laws that have been determined by federal tribunals, the Appellate Division's opinion in Herradura does not present, on its face, any occasion for reconsideration. It appears well supported in law and well reasoned. The Appellant did not invite our attention to Herradura as a wrongly decided precedent. It should be underscored that the creation of the Supreme Court of Guam did not erase pre-existing case law. ***Precedent that was extant when we became operational continues unless and until we address the issues discussed there.*** We will not divert from such precedents unless reason supports such deviation. We choose to let Herradura stand, without our reaching the merits of the issue presented, because we see no reason to reconsider its conclusions."

[12] West's Ann.Cal.Penal Code § 939.71 provides as follows: "(a) If the prosecutor is aware of exculpatory evidence, the prosecutor shall inform the grand jury of its nature and existence. Once the prosecutor has informed the grand jury of exculpatory evidence pursuant to this section, the prosecutor shall inform the grand jury of its duties under Section 939.7. *If a failure to comply with the provisions of this section results in substantial prejudice, it shall be grounds for dismissal of the portion of the indictment related to that evidence.* (b) It is the intent of the Legislature by enacting this section to codify the holding in Johnson v. Superior Court, 15 Cal. 3d 248, and to affirm the duties of the grand jury pursuant to Section 939.7." (Emphasis added).

## III. The Appellate Court's Decision in *Quidachay* Remains Controlling Law Upon the Trial Courts of Guam.

The Defendant urges the Court to disregard *Quidachay and Garrido, supra,* as "poorly reasoned, unsupported in law, and wrongly decided," and argues that the Appellate Division "impermissibly overstepped the bounds of well settled rules of statutory construction by ignoring the plain wording of the statute, and clouding the unambiguous statutory text with purported legislative history and tortured interpretations of the language itself." *Mot. at 13* (citations omitted). This Court finds that there was, indeed, some discussion in *Quidachay* regarding the Compiler's Note to 8 GCA § 50.42. However, it is incontrovertible that the appellate court's decision that an indictment can be founded upon hearsay was based upon its earlier ruling on the same issue in *People of the Territory of Guam v. Garrido,* 1984 WL 48828 (D.Ct.Guam App. 1984), *aff'd and remanded by People of Territory of Guam v. Garrido,* 752 F2d. 1378 (9th Cir. 1985)(discussing its rationale in *Garrido* rejecting defendant's contention that an indictment cannot be supported by hearsay, citing to Supreme Court rulings in *Costello* and *Short*)(citations omitted)). Thus, *Quidachay* and *Garrido* were not founded upon the Compiler's Note tucked away under the annotated statute, but rather upon a reliance on controlling precedent of the Supreme Court of the United States in *United States v. Costello,* 350 U.S. 359, 363, 76 S.Ct. 404, 406, 100 L.Ed. 397 (1956). *See Quidachay* at *2; *Garrido* at *2. The appellate court in both *Quidachay* and *Garrido* cited to the Ninth Circuit Court of Appeals case of *United States v. Short,* 493 F.2d 1170, 1173 (9th Cir. 1974) for support of its ruling that hearsay is admissible before the grand jury.[13] Thus, for Defendant to contend that the appellate court's rulings are

---

[13] Citing *Costello* and *United States v. Trenary,* 473 F.2d 680 (9th Cir. 1973). Both *Costello* and *Trenary* are good law. *See also,* U.S.A. v. Krug, 2013 WL 12205704 *4 (C.D. Cal. 2013)(citing *People of Territory of Guam v. Quidachay,* 815 F.2d 1311, 1312 (9th Cir. 1987))("Because 'there is no constitutional prohibition against presenting hearsay to a grand jury or against hearsay forming the basis for an indictment' ... any number of people with

"tortured," "poorly reasoned" and "wrongly decided" flies in the face of legal precedent which remain good, controlling law nearly four decades later.

As the court in *Quidachay* stated, referring to *Costello*, the function of a grand jury is only to determine whether evidence is sufficient to charge a person with a crime. The *Costello* court interpreted the meaning of "competent evidence" to create minimal restrictions of reliability. The Ninth Circuit considering *Quidachay* developed the standard further by stating that if the evidence is such that a reasonable person would rely upon, then it is competent within the meaning of the statute. *People v. Quidachay*, 815 F.2d 1311, 1313 (9th Cir. 1987). The Court continues to be bound by this precedent. In contrast, California law, as relied upon by the Defendant, is wholly irrelevant to the determination of dismissal here because California statutes (CA PENAL § 995) permit the dismissal of an indictment for failure of probable cause and authorizes dismissal when it is based solely on hearsay.[14]

IV. **Defendant Does Not Have a Right to Judicial Review of Grand Jury Determination of Probable Cause**

In *Kaley v. U.S.*, 571 U.S. 320, 328-329, 134 S.Ct. 1090, 1097-1000 (2014), the U.S. Supreme Court ruled that "A defendant has no right to judicial review of a grand jury's determination of probable cause to think a defendant committed a crime." In reaching this conclusion, the Supreme Court pointed to the "fundamental and historic commitment of our criminal justice system ... to entrust those probable cause findings to grand juries." *Id.* Under Guam law, an indictment issued by the grand jury presumes that reasonable cause (or probable

second-hand knowledge of the conversation between Doucet and Defendant could have testified before the grand jury – including anyone to whom Doucet reported the incident.").

[14] If we consider secondary sources for additional general support, 41 Am. Jur. 2d *Indictments and Information* § 28 confirms that probable cause to sustain and indictment "is a decidedly low standard." (citing *Com. v. Hainright*, 466 Mass. 303, 994 N.E.2d 363 (2013)("Probable cause is not a high bar as it requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act."). *See also,* 41 Am. Jur. 2d *Indictments and Information* § 30 as supporting this Court's ruling that an indictment which is valid on its face is not subject to challenge on the ground that the jury acted on the basis of inadequate or incompetent evidence. (numerous citations omitted).

cause) exists to believe that an indictable offense has been committed and that the defendant committed it. 8 GCA § 50.54(b). Thus, an indictment which is valid on its face and returned by a properly constituted grand jury "conclusively determines the existence of probable cause to believe that the defendant perpetrated the offense charged." *Id.* The Supreme Court in *Kaley* defines "conclusively" as follows:

> "[C]onclusively" has meant, case in and case out, just that. We have found no "authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded on sufficient proof." [citing *Costello*]. To the contrary, "the whole history of the grand jury institution" demonstrates that "a challenge to the reliability or competence of the evidence" supporting a grand jury's finding of probable cause "will not be heard." [citing *Williams, supra,* (quoting *Costello*)]. The grand jury gets to say – without any review, oversight, or second-guessing – whether probable cause exists to think that a person committed a crime.

*Kaley,* 571 US at 328-329. This Court holds that the Defendant does not have a right, either by statute or other law, to a review of the grand jury determination in this case. Moreover, even if it did determine it had such authority, the Court relies upon well established and controlling law that hearsay is competent evidence upon which a grand jury may base its finding of probable cause.

## V. Defendant's Miscellaneous Arguments Are Unsupported by Law

### A. Defendant's argument that presenting a police report as the sole basis of an indictment is a due process violation is not supported by law.

Arguing that "allowing a police report alone to be used as the basis of an indictment is a due process violation," Defense counsel does not cite to any cases supporting this contention. Pointing to *Williams v. Kobel* and *United States v. Gallo,* Defense counsel infers that the People engaged in prosecutorial misconduct before the grand jury with the intent of misleading them "into thinking that the hearsay testimony they were hearing was an eyewitness account." *Mot.* at 17. However, Defense counsel presents no evidence of any prosecutorial misconduct or

shenanigans supporting this claim and simply attacks the procedure by which the grand jury received the evidence presented to it and upon which it deliberated:

> Here, the prosecution questioned a single witness as to what was contained in the police report. The witness had no personal knowledge of the events purportedly reflected in the report. No additional information was sought; none of the witnesses who allegedly made the statements testified. *No independent investigation was performed by the grand jury.* The evidence was at least "uncertain." Far from meeting a stricter standard of proof, the grand jury relied on less information than the police, as at least the arresting officers interviewed witnesses. *Here, the grand jury relied on unreliable, multiple layers of hearsay.* Mr. Nededog therefore was denied the benefit of protections given to him by the statute, in violation of his due process rights.[15]

Defense counsel appears displeased with the grand jury's lack of "independent investigation," and seems to demand that a grand jury should be required to ask questions and conduct investigations on its own. However, neither the statutes governing grand jury proceedings nor any other Guam law requires the grand jury to conduct its proceedings in any specific manner. It only requires that the grand jury shall find an indictment "when from the evidence presented there is reasonable cause to believe that an indictable offense has been committed and that the defendant committed it." 8 GCA § 50.54 (b). Importantly, Section 50.18 (b) prohibits the court from interfering with the grand jury process and, while it permits the grand jury to seek advice of the Court, "unless such advice is requested, the judge of the court shall not be present during the sessions of the grand jury." 8 GCA § 50.18.

Defendant cites to *Williams v. Kobel*, 789 F.2d 463 (7th Cir. 1986) purportedly for the proposition that "the standard of proof at a grand jury proceeding and at a preliminary hearing…is necessarily stricter than that for arrest." *Mot.* at 16, 17. However, *Williams* involved the appeal of the trial court's grant of summary judgment in a 1983 action, the basis of which

---

[15] *Mot. at 17.* Defense counsel also points out that the grand jury asked no questions and it appears no investigation was conducted. *Mot.* at 2.

was that the defendant there was arrested without a warrant and without probable cause, in violation of his constitutional rights. *Id. Williams* is completely irrelevant to the case at bar as it did not address facts which are even remotely similar in this case. The central action before the appellate court in *Williams* is distinguishable from this case in that it is grounded in 42 U.S.C. § 1983 (a "1983" action) and any discussion regarding whether the 1983 action is appropriate invoked review of a judge's probable cause determination in a preliminary hearing. *Williams* does not address the standard of proof in the context of a grand jury proceeding. Therefore, *Williams* is inapplicable here.[16]

Defendant also cites to *United States v. Gallo,* 394 F.Supp. 310 (D. Conn. 1975),[17] for support for its Motion to Dismiss; however, the Court is bewildered by its application to the issues before it in this case. In *Gallo,* the Indictment at issue was the result of a second grand jury proceeding after the first Indictment was dismissed by the prosecution for several errors in the initial true bill. *Gallo* at 312. During the first grand jury proceeding, the main witness for the government admitted that he had perjured himself before the grand jury as to certain portions of his testimony, but he reaffirmed other portions. *Id.* After the prosecution dismissed the charges in the first case, a new indictment was issued by a grand jury composed of entirely different grand jurors from the first proceeding, and the true bill was based upon a review of transcripts from the first grand jury proceeding and upon remarks by the prosecuting attorney. No live testimony

---

[16] The Court notes that *Williams* holds that the determination made by a judge at a preliminary hearing as to whether there is "probable cause" to issue an Information is "a stricter standard of proof, including evidentiary rulings, than a review of the officers' actions and the probable cause to arrest." *Williams* at 469, 470. However, this ruling does not apply in this case, where the reasonableness of Nededog's arrest is not at issue in the motion to dismiss, but rather the reasonableness of the grand jury's determination of probable cause. It is also notable that the court in *Williams* actually emphasized the difference between the preliminary hearing before a judge and that of a grand jury proceeding. The issues presented in *Williams* are not at all similar or relevant to the question before this Court; therefore, Defense counsel's citation thereto is perplexing.

[17] The Court notes that Defense Counsel has failed to cite to the full and proper citation to *United States v. Gallo,* requiring it to conduct additional research in order to review the case law. Counsel is reminded of its obligations under Rules 1.1 (Competence), 1.3 (Diligence), 3.1 (Meritorious Claims and Contentions), 3.3 (Candor Toward the Tribunal)

was presented at the second grand jury proceeding. The second grand jury returned an indictment. *Id.* at 312, 313.

*Gallo* is equally irrelevant here, however, and not simply because its facts are wholly distinct. In that case, the court cited several reasons for dismissing the second indictment, including that the government attorney failed to disclose to the second grand jury the portions of the witness's testimony which had been false or perjured and found that "there was an affirmative duty on the part of the prosecutor under the circumstances here to enlighten the grand jurors as to the hearsay *quality* of the evidence they were receiving." *Gallo* at 315.

The Court cannot find such an affirmative duty to have existed here. A live witness was presented to the grand jury, and the grand jury was free to evaluate the credibility of that witness and either reject or accept it as establishing the requisite probable cause to issue a true bill of indictment against Nededog. By contrast, in *Gallo,* not a single witness was available to the grand jury, which was unable to consider the credibility of the evidence presented to it and consider it carefully and deliberately in light of the circumstances involving the main witness's earlier perjury; therefore, the Connecticut appellate court found that this justified dismissal of the indictment against the defendant:

> [T]he prosecutor failed to alert the second grand jury that the transcripts upon which it was to base an indictment were permeated with perjurious statements as to crucial, material events. Buckley's false testimony before the first grand jury poisoned the waters of evidence. ... While the first grand jury was fully aware of the discrepancies in Buckley's testimony before it returned the original indictment, it cannot be assumed that the second grand jury recognized that portions of the evidence before it were tainted. This stain of falsehood should have weighed heavily in the balance before the second indictment was returned. The defendants cannot be permitted to stand trial on an indictment which to the government's knowledge may have been founded on perjured testimony.[18]

---

[18] *Gallo,* 394 F.Supp at 315.

There is no claim here that the testimony presented to the grand jury was false. Defense counsel only terms the testimony as "uncertain," "unreliable, multiple layers of hearsay" and contends that the presentation of this evidence to the grand jury somehow denied Nededog of "the benefit of protections given to him by the statute, in violation of his due process rights" without establishing how due process was denied. *Mot.* at 17. Having failed to present any relevant case authority in support of this basis as grounds to grant the motion to dismiss, the Court rejects this contention.

**B.      Defendant's argument that "courts lack authority to permit indictments to be returned based wholly on incompetent evidence as this would require an act of the Legislature" is confusing and fails to fully develop an argument capable of being addressed by the Court.**

The Court is unsure of what legal argument is proffered in support of the dismissal motion by Defense counsel in this section entitled "Courts lack authority to permit indictments to be returned based wholly on incompetent evidence as this would require an act of the Legislature." *Mot.* at 18. Defense counsel launches into a discussion of what appears to be a separation of powers argument and issues the following conclusory statements without developing how these apply to the instant case:

> Here, the Legislature has passed a clear and unambiguous statute that requires indictments to be based on *sufficient competent evidence*. Courts are therefore constrained to enforce the statute as written. A court cannot permit that which the statute clearly prohibits as doing so essentially rewrites the statute in violation of the authority granted to the courts by the Organic Act. Such an action also denies the legislative process afforded the citizens of Guam. The Court is therefore required to dismiss the Indictment in accordance with the law.

Defense counsel does not identify what "clear and unambiguous statute" is referred to in the first sentence of this paragraph, and does not explain what it is that "the statute clearly prohibits" courts from doing. While the Court does not necessarily disagree with the legal principles stated

in this portion of the Motion to Dismiss, it cannot adjudicate the arguments presented here as the discussion fails to provide the Court with a legally cognizable argument capable of a response. As such, any basis for dismissal advanced in this section is rejected.[19] Additionally, to the extent that Defense Counsel asks this Court to reject the grand jury's determination of probable cause, such an act requires legislative authority, as discussed in II.A.1., *supra.*

**C.     The Court denies Defense Counsel's request to dismiss the Indictment as a sanction for the prosecution's purported practice of using excessive hearsay.**

Defendant fails to cite to any legal authority for this proposition. *U.S. v. Serbo*, 604 F.2d 807, 814 (3rd Cir. 1979), cited to by Defense Counsel, is irrelevant because in that case it was argued (and the trial court determined) that the prosecution engaged in misconduct before the Grand Jury which the trial court described as "improper, reprehensible and unacceptable."[20] There is no allegation that the People engaged in misconduct before the grand jury, and the Court rejects the argument that dismissal is warranted due to the prosecutions alleged "use of excessive hearsay." Therefore, the Court denies dismissal on these grounds.

**D.     "Misuse of the grand jury proceeding".**

Defense counsel complains of the People's purported "misuse of the grand jury proceeding" based on what it characterizes as the "excessive use of hearsay" and the

---

[19] To the extent that Defense Counsel merely reiterates her argument that a grand jury indictment must be based upon sufficient competent evidence, that argument has already been addressed by this Court. The Legislature has already spoken with respect to what constitutes competent evidence presented to a grand jury within the statutory provisions of Title 8 GCA Chapter 50, and it includes hearsay.

[20] Defense counsel failed to provide the Court with complete citations to a number of cases cited in its Motion to Dismiss, including *U.S. v. Serbo,* 604 F.2d 807 (3rd Cir. Ct. App. 1979). This failure required the Court to conduct additional research in order to adequately address the arguments raised and authority cited purportedly in support of the several bases upon which Defense counsel has asserted the motion to dismiss. The Court found to its dismay that a number of the cases cited by Defense Counsel were wholly irrelevant, immaterial and inapposite to the case at bar and, in some instances, completely misstated the holding in the case cited. This Court reminds Counsel of its duty of candor to the Court and to comply with all applicable rules governing the filing of pleadings in this court, including, but not limited to the Rules of Civil Procedure (where applicable) and the Local Rules of the Superior Court of Guam.

prosecution's failure to have the accusers testify before the grand jury. *Mot.* at 19. Defense Counsel has not provided the Court with any law supporting this argument or defining what would constitute "excessive use of hearsay" or how courts might measure such "excessive use of hearsay." As discussed herein, the state of the law in Guam is that the trial court will not inquire into the competency or sufficiency of evidence before the grand jury. 8 GCA § 50.42; *Quidachay, supra; Costello, supra.*

## CONCLUSION

For the reasons set forth herein, the Court DENIES Defendant's motion to dismiss the Indictment. Trial dates for this ASSERTED matter and any relevant briefing schedules shall be forthcoming under separate Order.

SO ORDERED this _____ 1 1 FEB 2021 _____.

HONORABLE MARIA T. CENZON
JUDGE, SUPERIOR COURT OF GUAM